EDWARD K. HOVAS *vs.* VINCENT A. CIRIGLIANO.

LUCY E. HOVAS *vs.* SAME.

JUNE 28, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

228

Moss, J. These are actions of trespass on the case, brought by a man and his wife respectively, to recover damages sustained and alleged to have been caused by the de-

fendant's negligence in so operating an automobile that it ran into one in which the plaintiffs were riding, in the intersection of Thayer and Waterman streets in the city of Providence.

These actions were tried together before a jury in the superior court and at the conclusion of the trial a verdict for the defendant was returned in each case. Thereafter in each one a motion by the plaintiff for a new trial was granted by the trial justice, on the ground that the verdict was against the evidence and the weight thereof. Each of them is now before us on a bill of exceptions filed by the defendant, the principal exception being to the granting of the motion for a new trial. In neither of them was a bill of exceptions filed by the plaintiff.

According to the testimony of the plaintiff Major Edward K. Hovas the collision, which was at about 10 o'clock in the evening of Labor Day, September 1, 1941, when the weather was clear and the streets dry, occurred in the following manner: He, then a captain, was returning to his residence in the city of Providence from a shore resort and was driving his automoibile in a southerly direction down Thayer street in about the center of the street. In the car with him were his wife and their three children. His wife was sitting on the right side of the front seat and their daughter Josephine, fifteen years old, was sitting between them. On the rear seat were their daughter Lydia, twenty years old, sitting on the left, and their son Roy, nineteen years old, sitting on the right.

Just before entering the intersection with Waterman street he stopped, a little beyond the "stop sign" on Thayer street on his right, the front of his car being then 2 or 3 feet north of the extension of the curb line of Waterman street, the sidewalk on which was 12 feet wide. His seat was 5 feet back of the front end of his car so that he had an unobstructed view up that street. While the car was stationary, he looked to his right to see if any car was approaching from that direction, and saw a car, which proved to be the

defendant's, coming on its right side of Waterman street, at a speed which he estimated to be around 25 miles per hour. It was then about at the westerly end of a long building on the south side of the street. He saw no other car coming. Waterman street was 25 feet wide from curb to curb and there were trolley car tracks in the middle of it.

Major Hovas formed a judgment that it was safe for him to proceed across the intersection; so he then started his car forward in first, i.e., the lowest, speed and did not see the other car again until the rear of his car was over the trolley car tracks and the front part of it was beyond them. Then he saw the glare of headlights on his right and saw the defendant's car coming. It was very close and headed for the center of the plaintiff's car, which car was then in second speed; and he pushed the accelerator clear down. His car "jumped ahead" and had traveled about 10 feet farther and all but the rear of it was beyond the intersection, when the front of the defendant's car ran into the rear of the plaintiff's car. The result of the collision was that the plaintiff's car was turned upside down and badly damaged and both the plaintiffs were severely injured.

When he was later recalled by the defendant's attorney for further questioning and was asked whether he did not recollect testifying at a previous trial of the case that his car was in high gear and going about 12 miles per hour, when it was about at the center of the intersection, and that he "had skipped second", and that he had made an "instant stop" before entering the intersection, he answered in the negative and said that he believed that the car was in second gear, when it was in the middle of the intersection, but that it might have been in high.

The other plaintiff testified that, as her husband came to Waterman street, he stopped at the corner and then started again; that when he stopped, she saw a car to the right coming on Waterman street, quite a distance away; that when he started up again, he drove straight ahead and when they were almost three-quarters through the in-

tersection, she saw the other car, a big one, approaching fast; that their car "started to shake like"; that when only the back of it was in Waterman street, the other car hit it with a bang; and that she next found herself on the sidewalk with a doctor beside her.

The daughter Josephine testified that at the time of the accident she was resting, with her head on the back of the front seat and her eyes closed; that she remembered the car stopping; and that then, as they were going across Waterman street, she felt a little jerk forward, as if her father had stepped on the accelerator; and that the next thing she remembered was an "awful bang and crash-up." The other daughter testified that her father's car stopped at the stop sign on Thayer street near Waterman street; that she was then looking to her left; that after they had gone some distance into Waterman street the car made a jerk forward and then a "bang up" occurred; but that she did not see what hit the car.

The plaintiff's son testified substantially as follows: He was at the time of the accident a pupil at the Hope street high school in Providence and was very familiar with the locality, having many friends in Brown University. His father's car stopped momentarily at the stop sign on its right side of Thayer street just before entering its intersection with Waterman street. The car was then about in the middle of Thayer street and the front of it was perhaps 3 or 4 feet beyond an extension of the northerly curb line of Waterman street.

When the car started up, after that stop, he had his face to the right, wondering if any of his friends were then around. He then saw one automobile, traveling downgrade easterly, on the south side of Waterman street and just about at the west end of the second building west of Thayer street, on that side. This was a long laboratory building of Brown University. There was no other car between that one and Thayer street. He looked ahead down Thayer street

and saw a car parked on the right side but not in the way of his father's car.

When he looked to his right again, he saw that the car which he had seen on Waterman street was coming quite fast on the south side of that street, between the trolley car tracks and the curb, and was only about 10 feet away from his father's car. Then his father's car "lurched forward suddenly." He watched the other car, which made no change of speed but came straight forward and struck his father's car, only 3 or 4 feet of which was in the intersection, overturned it and continued about four car lengths down Waterman street.

Major Littlefield testified for the plaintiffs substantially as follows: He lived on the northerly side of Waterman street east of Thayer street and at the time of the collision involved in this case was returning home from a moving picture theatre on the latter street. As he was walking down the easterly side of that street, intending to turn to his left on reaching Waterman street, he saw, out of the corner of his eye, an automobile, which he afterwards learned was that of Major Hovas, moving south on Thayer street and approaching Waterman street. He noticed it go to the intersection, stop there and then proceed across Waterman street.

At the time when it made this stop he saw headlights coming down Waterman street, which were then probably about midway of the laboratory building at a point which, at a "rough guess", he would say was about 100, 150 or 200 feet from the intersection when the car on Thayer street started to cross. He formed no judgment of the speed of the car on Waterman street. The car on Thayer street had reached a point a little beyond the intersection, when the right rear of it was hit a crashing blow by the right front of the car coming down Waterman street.

Not wishing to be caught by the police as a material witness, he "ducked out of sight." The next day he learned from a newspaper of Major Hovas's connection with this

collision. About two months later he went on special duty at Camp Devens for two weeks and there had occasion to meet Major Hovas, for the first time, and inadvertently admitted that he had witnessed this accident. "That", the witness said, "was the beginning of a long and beautiful friendship, you might call it."

On cross-examination he admitted that at the previous trial of these cases he probably testified that Major Hovas made an "instant stop" before entering the intersection. The context indicates that what he meant, if he so testified, was that Major Hovas *stopped* at the stop sign and then at once started forward again. This was no evidence that Major Hovas did not make a full stop.

A man who was a witness for the defendant testified to the following effect: On the evening of this collision he was walking westerly on the south side of Waterman street and was about 100 feet east of Thayer street when he saw a car, being the one which the defendant was driving, coming down Waterman street, not having yet reached Thayer street; and at the same time he saw a car moving down Thayer street and then in the middle of the intersection of the two streets. As an accident appeared to be imminent, he watched the cars. Then, to quote his own language, "the car coming down Waterman street struck the car at the right rear corner of the car and they broke away immediately and the car on Thayer street continued down Thayer street and as I was some ways from the corner, it disappeared from my view before it was turned over."

He said that he "didn't make any note of the speed of the car on Thayer street, except that it appeared to be increasing its speed, going faster all the time." He said that he thought that the car on Thayer street was going faster than the car on Waterman street. He went to the Hovas car and found that it had turned upside down and was across Thayer street at right angles, the front facing to the west. On cross-examination he stated that at the time of the collision the front portion of the Hovas car had cleared

the southerly curb line of Waterman street and that it was the right front of the defendant's car that collided with the right rear of the Thayer street car.

The defendant himself was the only other witness who testified on his side of the case. He was twenty-one years old at the trial, which would make his age at the time of this accident about nineteen years. His testimony, in substance and effect, was as follows: At the time of the collision he was on the way to his home in Weymouth, Massachusetts, from the city of New Haven, where he had been spending the week-end. With him in the car were two other young men who, at the time of the trial, were respectively in the army and navy, and a young woman, who was his cousin. He had never driven through Providence before and was unfamiliar with the streets through which he was driving. One of the other young men was on the front seat with the defendant, whose cousin and the other young man were on the back seat.

The speed of his car, as he was driving down Waterman street, on its right side, and approaching Thayer street, was about fifteen miles an hour. As he started to enter the intersection, he looked to his right and then to his left and saw a car coming down Thayer street quite fast, right at him. He first saw it when he was entering the intersection. So he put on his brakes; and the other car, which seemed to be coming 30 or 35 miles an hour, veered sharply to the left and the front of his car came in contact with the rear of the other car, which tipped over and rolled over and hit a parked car on the west side of Thayer street. It rolled again and came to a standstill. His car stopped just about at the point of contact and stayed there until after he had gone to help people out of the Hovas car. He then came back and found, in the street, marks about 10 feet long, and curving a little to the right, made by his tires.

The police arrived in due time and he heard the police lieutenant ask the driver of the other car if he stopped at the stop sign, as he entered the intersection; and he heard

the latter say that he slowed down almost to a stop at about 12 miles an hour and then came through. The defendant also testified, on cross-examination, that he had applied his brakes 20 to 25 feet before he got to Thayer street, though not as hard as he could; that when the collision occurred he had them down as hard as he could, but that he would say that the car "hopped ahead 2 or 3 feet"; that he believed that the front of his car was just about 3 or 4 feet into the intersection and was still slowing down, when he first saw the Hovas car, which was then just about at the line of Waterman street and moving at a speed of 30 or 35 miles an hour.

At the conclusion of the testimony of witnesses, the defendant's attorney read in evidence, by agreement with the plaintiffs' attorney, the following, as being the statement which a police lieutenant would, if present, testify was made to him by Major Hovas at the scene of the collision, soon after it occurred: "I was driving on Thayer street going south right in the center of the intersection, and out of the corner of my eye, I saw this car coming from my right and I did my best to get out of the way. I gave it the gas. The collision was too quick coming from my right. When it hit, it turned me around. I did my best to hold it and then it turned over. I had slowed down almost to a stop at the stop sign and that was the time I saw him and gave it the gas."

Also, by a similar agreement, the defendant's attorney read in evidence the following, as being the statement which the police lieutenant would, if present, testify was similarly made to him by the plaintiff's son: "I was riding in the rear seat of the Chevrolet on the right side, and looking to my right I saw the lights of a car on the highway but did not see the car until we passed the corner. Then I saw the car coming toward us. I thought it would hit in front and my father stepped on the gas and the car hit us and turned us sharply."

The defendant's attorney, in his brief and argument before us, relied on numerous exceptions taken by him at the trial to statements made by the plaintiff's attorney to the jury and to rulings by the trial justice in the course of the trial. He tried to justify such reliance on the ground that if, notwithstanding such statements and rulings, the defendant was able to secure a verdict in his favor, "the evidence must have overwhelmingly preponderated in his favor." This argument is very ingenious, but we can see no merit in it.

The only decisive exception in each of these cases is the one taken to the decision of the trial justice in granting the plaintiff's motion for a new trial. In the case of Major Hovas the trial justice, in his decision, said that it seemed to him that the only real question was whether Major Hovas was guilty of contributory negligence by entering that intersection after having seen the defendant's car. This question he answered as follows: "I think the great preponderance of evidence is against that proposition. I think he was fully justified in entering the intersection at the time he did and that this collision was due entirely to the negligence of the defendant."

It is well settled by opinions of this court, that when the evidence is nearly balanced, or is such that different minds may reasonably and fairly come to different conclusions therefrom, the trial justice, in passing upon a motion for a new trial, should not disturb the verdict of the jury, even though his own judgment might incline him to a contrary conclusion. *Humes* v. *Schaller*, 39 R. I. 519 at 522; *Nichols* v. *New England Tel. & Tel. Co.*, 57 R. I. 180, at 185; *Anderson* v. *Johnson*, 59 R. I. 241, at 244. In other words, he should give weight to a jury's finding and not set it aside upon a mere doubt of its correctness or substitute his own judgment for that of the jury. *Colgan* v. *United Electric Rys. Co.*, 62 R. I. 184, at 188.

The rules to be applied by this court, when passing upon an exception to a decision of a trial justice sustaining a

motion for a new trial on the ground that the verdict is against the weight of the evidence, are also well settled. One of these is that where the evidence is conflicting and there is nothing to indicate that the trial justice overlooked or misconceived any of the evidence or failed in any way to perform his duty in the matter, his decision granting a motion for a new trial will be regarded by us with great persuasive force and will not be disturbed unless it appears to be clearly wrong. *Colgan* v. *United· Electric Rys. Co., supra*, at 190; *Allsop* v. *Gallant*, 62 R. I. 339, 404. But if in the judgment of this court the decision was clearly wrong, an exception thereto should be sustained.

In Major Hovas's case we have carefully examined and considered the evidence relevant to the question of contributory negligence by him; and we are of the opinion that the trial justice was clearly wrong in deciding that "the great preponderance of the evidence" was against the proposition that the plaintiff was guilty of contributory negligence "by entering that intersection after having seen the defendant's car." On the contrary, the evidence on the question of Major Hovas's contributory negligence presented a clear issue of fact for the jury's determination; and such evidence was so nearly balanced that fair-minded persons could reasonably come to different and opposite conclusions. In our opinion the trial justice clearly misconceived the weight of the evidence on this issue.

We therefore are of the opinion that the defendant's exception to the decision of the trial justice should be sustained. As this conclusion is decisive of the defendant's right to the entry of a judgment in his favor in that case, upon the jury's verdict, we see no sufficient reason for deciding or discussing herein any of the defendant's other exceptions, nearly all of which were to the admission of evidence offered in behalf of the plaintiffs.

As to the wife's case, the situation is very different. There was no evidence that she had anything to do with the driving of her husband's car or assumed any responsibility with

regard thereto, or that she was in any way guilty of contributory negligence. On the other hand, there was evidence from which the trial justice could reasonably find, as he did in passing upon her motion for a new trial, that the defendant was guilty of negligence in the driving of his car. And it is clear from the language of his decision that in his judgment the defendant's negligence was a proximate cause of the wife's injuries.

We therefore are of the opinion that the defendant's exception to the decision granting her motion for a new trial should be overruled. As the result of the overruling of that exception will be that she will be entitled to a new trial upon all proper issues in the case and the defendant will be entitled to all proper defenses, irrespective of any rulings made by the trial justice at the trial now under review, we see no sufficient reason for passing upon any of the other exceptions set forth in the defendant's bill of exceptions now before us.

In the action brought by Edward K. Hovas, the defendant's exception to the granting of the plaintiff's motion for a new trial is sustained, and the case is remitted to the superior court for the entry of judgment upon the verdict.

In the action brought by Lucy E. Hovas, the defendant's exception is overruled, and the case is remitted to the superior court for a new trial.

*William A. Gunning,* for plaintiffs.
*Francis V. Reynolds,* for defendant.