WILLIAM SANDERSON, JR. *vs.* NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.
RHEA SANDERSON *vs.* NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

MAY 28, 1958.

PRESENT: Condon, C. J., Roberts, Andrews and Paolino, JJ.

CONDON, C. J.   These are actions of trespass on the case

for negligence which were tried together in the superior court and resulted in a verdict for each plaintiff. Thereafter the defendant moved for a new trial in each case. The trial justice granted the motion in William Sanderson's case and denied it in the case of Rhea Sanderson on condition that she remit all of the verdict in her favor in excess of $8,000. She duly filed such remittitur and thereupon defendant brought both cases here by its bills of exceptions.

At the conclusion of the evidence in the superior court defendant moved for a directed verdict in each case, which was denied. It excepted to such denial and that exception is the principal one in each case. It has also alleged numerous other exceptions to rulings on the admission of evidence, on objections to the charge, and on its requests to charge. In the case of Rhea Sanderson, defendant also excepted to the denial of its motion for an unconditional new trial.

We shall first discuss the exception to the denial of defendant's motion for a directed verdict in the case of William Sanderson, but before proceeding to such discussion we shall briefly summarize the principal facts out of which the controversy between the parties arose. The plaintiffs are husband and wife. On May 1, 1953 they were involved in an accident on a railroad crossing at Chace's Lane in the city of Central Falls in this state. The accident happened as a result of a collision between defendant's diesel locomotive and plaintiff William Sanderson's automobile. At the time of the accident he was driving and his wife was riding beside him on the front seat. The impact of the collision threw her out of the automobile and also injured her husband. The automobile was seriously damaged.

The husband sued for damages for personal injuries, loss of his wife's services, and for property damage. His wife brought her action solely for personal injuries. Each declaration alleged the following breaches of duty on the part of defendant as the proximate cause of the accident: 1. It

failed to give warning of its approach as required by general laws 1938, chapter 124, §5. 2. It failed to keep its locomotive and freight cars under control. 3. It failed to slow down at Chace's Lane. 4. It traveled at an unreasonable rate of speed.

The defendant pleaded the general issue and the theory of its defense was first, that Chace's Lane was not a public way within the meaning of §5 and therefore it could not be guilty of the breaches of duty alleged; and secondly, that if the lane was a public way its engineer was not negligent. And in any event it claimed that plaintiff William Sanderson was negligent in operating his automobile over the crossing in the face of the approaching train. It further maintained that his wife, although only a passenger in the automobile, was also negligent in the special circumstances surrounding her position in the automobile and her opportunity for observation of the oncoming train as the automobile reached the crossing.

The following facts are undisputed. Chace's Lane runs generally east and west from High street on the east to Broad street on the west. Each of those streets is a public highway but Chace's Lane is not. However, for a long period of time it has been constantly and frequently used by the general public for foot and vehicular travel with the knowledge of defendant and without any interference on its part. The defendant introduced documentary evidence that the title to the lane was private. At each approach to the crossing there is a sign which reads: "Private Crossing Dangerous Look Out For Trains N.Y. N. H. & H. R.R. Co." On the day of the accident plaintiff entered Chace's Lane from High street and drove his automobile in a westerly direction toward the railroad. The railroad consists of two tracks running generally north and south. In its brief defendant refers to the southbound track as No. 1 and to the northbound track as No. 2. We shall hereinafter follow that description.

Chace's Lane is level until it approaches the railroad when it rises. The plaintiff in his testimony refers to this rise as a hill. When he reached that point, or as he describes it "the base of the hill," he stopped and looked to his left and then to his right, that is, to the south and north. He was able to see "probably fifty feet" to the north but did not see anything and could hear only the rain coming down and the rumble from the Corning Glass Works which was near by. He testified he did not hear a bell or whistle. He then started "up the hill" at no more than three to five miles per hour and as he reached the top he came to "another almost dead stop" and looked again to the north. He could see only 100 to 125 feet although he admitted that the track to the north was straight for one-half mile.

He explained that his inability to see further was due to the driving rain, the overcast, and a pole and some trees which blocked his view. He then proceeded over the crossing at three to five miles per hour looking straight ahead. When he was almost across track No. 1 his wife exclaimed "Oh, the train." Up to that point he had neither seen nor heard the train. He was familiar with the crossing and had passed over it on a number of other occasions. He also knew of the "Private Crossing" sign and he admitted that after one passed the sign there was no obstruction to his view northward. Before one reached the sign there was a telegraph pole. It was before he reached that pole that he came to "that almost complete stop." He last looked for the approach of a train when he passed that pole. At that point before he started to cross the tracks his speed was one mile per hour and he could have stopped within one foot.

Rhea Sanderson testified that it was raining very hard when they reached the crossing. It was 6:05 a.m. and was just turning daylight. When they reached the bottom of the hill her husband stopped the car and she looked out the side window to the north and could see about 100 feet, but she only saw a big tree with leaves on it and also bushes

alongside of it. Her husband then drove up the hill about five miles per hour. At the top of the hill he came to "an almost complete stop" and then she again looked to the north. At that point the automobile was four feet from the east rail of track No. 2 and she could see down the tracks 100 feet to the north but there was "nothing on the tracks." She heard no bell or whistle from the train. Her husband drove at about five miles per hour over the tracks and "Just as we were going over the second set of tracks I happened to turn to my right * * *. I saw a light in the back window. * * * It was a big light. I knew it was a train then. So I screamed, 'The train!'" When her husband almost stopped the automobile four feet from the east rail of track No. 2 the part of the automobile where she was sitting was a little past the "Private Crossing" sign.

The physical facts with reference to the location of the railroad tracks and to one's opportunities for observation to the north from the two points where plaintiff William Sanderson stopped and "almost" stopped before crossing the tracks are in evidence and are undisputed. The defendant's witness William I. Platt made a survey of the crossing and a map thereof which was admitted in evidence as an exhibit. According to such survey the east line of defendant's property is 40 feet 6 inches east of the east rail of track No. 2. The "Private Crossing" sign is 19 feet easterly of that rail, and 32 feet 4 inches easterly of the east rail of track No. 1. It is 37 feet ½ inch from the west rail of that track. The survey also showed that a person standing in the center of track No. 1, or five, or fifteen, or twenty-five feet easterly thereof could see to the north 1,870 feet. One standing 35 feet from that point could see northward 1,550 feet; 50 feet away, 572 feet; 75 feet away, 442 feet; 100 feet away, 232 feet; 125 feet away, 177 feet; and 150 feet away, 125 feet. The view at any of such points north along the property line of the railroad and the east rail of track No. 2 was unobstructed.

We have carefully considered the evidence with reference to the use of this crossing by the public and we are of the opinion that the trial justice did not err in leaving to the jury, in accordance with the law as stated in *Lemieux* v. *Leonard Construction Co.*, 73 R. I. 338, the determination of the question whether the crossing was public as far as the obligation of defendant to observe the requirements of chap. 124, §5, was concerned. In each case defendant's exception on this point is overruled.

After further considering the evidence, we are also of the opinion that the trial justice did not err in denying the motion for a directed verdict for the defendant in each case. While the evidence on behalf of each plaintiff in proof of each count of the declaration appears to us to be lacking in probative force compared with defendant's evidence, we cannot say as a matter of law that defendant was free from negligence or that plaintiffs were guilty of contributory negligence. In passing upon a motion for a directed verdict the trial justice cannot weigh the evidence nor can we in reviewing his decision. On such a motion by defendant we must disregard its evidence entirely except where a reasonable inference may be drawn therefrom in favor of plaintiffs. The defendant's exception to the denial of its motion for a directed verdict in each case is therefore overruled.

We now come to defendant's exception to the denial of its motion for a new trial in the case of Rhea Sanderson. The trial justice very properly granted a new trial in the case of William Sanderson, but because Rhea was a passenger he differentiated her case from her husband's on the ground that his negligence could not be imputed to her and he relied upon *Wilson* v. *New York, New Haven & Hartford R.R.*, 18 R. I. 598, *Hermann* v. *Rhode Island Co.*, 36 R. I. 447, and *Hovas* v. *Cirigliano*, 70 R. I. 227. We find no fault with his view of the law on this point. Nor do we inquire whether he was clearly wrong in concluding that there was evidence from which the jury could reasonably

find that Rhea Sanderson was free from contributory negligence. However, we think that the verdict nevertheless does not respond to the true merits of the case because, in our opinion, she has clearly failed to prove by a fair preponderance of the evidence that defendant was negligent in the manner in which it operated its train as it approached the crossing.

The probative value of defendant's evidence as to the manner in which the train was operated and the surrounding circumstances at the time of the accident is more than equal to that of plaintiff Rhea. The positive, uncontradicted testimony of the engineer is that he started the automatic bell ringing for Whipple's Crossing over a mile away from Chace's Lane, and it continued ringing until after the accident when he shut it off. The fireman corroborated the engineer and stated the bell could be heard 1,000 feet away. The head brakeman testified that he heard the bell ringing before approaching Hunt street crossing, which is north of and close to Chace's Lane, and that it had been ringing all the way from Whipple's Crossing.

The engineer also testified he sounded the whistle before every crossing and that it could be heard for a mile or more. The fireman and brakeman testified that they heard it and the former said it could be heard approximately two miles away. The freight conductor and the freight flagman riding in the caboose a quarter of a mile from the front end of the train testified that they also heard the whistle. The flagman testified further that when it was sounded for the Hunt street crossing it would cover Chace's Lane as they were so close.

The fireman further testified that as the train approached Chace's Lane he was looking out the cab window and saw the automobile coming toward the crossing at about 15 miles per hour and that he watched it until it got to the top of the grade thinking it was going to stop, but when he saw it almost stop and then go on to track No. 2 he hol-

lered to the engineer to put the engine into emergency. The train made what he called a "good stop" in about ten car lengths. At the time, it was traveling south on track No. 1 at a speed of between 28 and 30 miles per hour. He further testified that as he hollered the automobile "shot across."

In the face of such positive evidence that the bell was ringing and that the whistle was blowing, plaintiff Rhea's testimony that she did not hear any bell or whistle carries little if any weight. There is other evidence of a positive nature, which we need not discuss here, that confirms our view of plaintiff's failure to discharge her burden of proof. We are, therefore, of the opinion that the trial justice was clearly wrong in denying defendant's motion for a new trial.

The defendant's exception to the denial of its motion for a directed verdict in the case of William Sanderson, Jr., is overruled, and the case is remitted to the superior court for further proceedings. Its exception to the denial of its motion for a new trial in the case of Rhea Sanderson is sustained, and the case is remitted to the superior court for a new trial.

*John F. McBurney*, for plaintiffs.

*William J. Carlos*, for defendant.